**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 18-60588

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2019

Lyle W. Cayce
Clerk

GARY W. NETTO; DEJUANA L. NETTO,

    Plaintiffs - Appellees

v.

ATLANTIC SPECIALTY INSURANCE COMPANY,

    Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before OWEN, SOUTHWICK and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This case presents a question of first impression under Mississippi insurance law: may an insurer rely on a consent-to-settle exclusion in an insurance policy to deny coverage of a claim made by an unnamed additional insured under that policy? We conclude that absent evidence that the unnamed insured knew or should have known of the exclusion, the insurer may not enforce its contractual right to deny coverage because it had not consented to the settlement.

AFFIRMED.

No. 18-60588

FACTUAL AND PROCEDURAL BACKGROUND

Gary Netto was involved in an automobile accident while acting in the scope of his employment for Pearl River County, Mississippi. The automobile in which Netto was a passenger was owned by Pearl River County and insured by Atlantic Specialty Insurance. Netto was not a party to the policy between the county and Atlantic, but was an unnamed additional insured under its terms. The at-fault vehicle was allegedly uninsured.

Nearly two years after the accident, Netto's attorney sent a letter to the Pearl River County Board of Supervisors advising the Board that she had been "retained to represent the interest of Gary Netto, involved in an automobile accident in Pearl River County, Mississippi on August 14, 2013." The letter requested that the Board "forward this correspondence to the insurance carrier in force at the time of [the] accident and request that they make contact with our office immediately." Atlantic received the forwarded letter on June 2, 2015 and assigned the case to claims adjuster Barbara McConnell that same day.

McConnell's claim-file notes from June 3-4 confirm that Atlantic considered Netto's claim to be a possible uninsured motorist ("UM") claim. The notes indicate that Atlantic contacted a representative of Pearl River County to discuss Netto's potential claim. McConnell admitted in her deposition that no one from Atlantic gave Netto any information regarding the applicable policy.

While Netto's counsel sought unsuccessfully to contact the county's insurer, she was negotiating a settlement with the at-fault driver and the Mississippi Workers' Compensation Trust. Netto reached a settlement with both, and the Mississippi Workers' Compensation Commission approved the settlement.

Atlantic did not attempt to contact Netto until the day the Commission approved the settlement, when McConnell left a message with Netto's attorney

2

requesting a return call.  There is no evidence that Netto's counsel returned the call, or of any additional attempts by Atlantic to contact Netto.

Nearly two months later, Netto's counsel, having learned that Atlantic was Pearl River County's insurer through an unrelated suit, sent a second letter directly to Atlantic through its website.  That letter informed Atlantic of the settlement and raised a possible claim:

> The policy limits have been collected from the at-fault driver, and we intend to make a UM claim.  Currently there are two (2) possible UM policies at issue – the county's and Mr. Netto's GEICO policy.  I believe the first step is to determine whether Mr. Netto is eligible to make a claim under the county UM policy, pending the policy language, since he was a passenger in a county owned truck and has a worker's compensation claim.
> Considering the foregoing, I ask that you assign an adjuster to this claim and provide the relevant policy documents so that we can determine which UM carrier is primary.

More than a year passed without a response from Atlantic before Netto and his wife filed suit, seeking damages under the uninsured motorist policy Atlantic issued to Pearl River County.  Atlantic moved for summary judgment, arguing that Netto was excluded from coverage due to his failure to obtain Atlantic's consent before settling.  The district court denied the motion, holding that Atlantic had "not provided summary judgment evidence demonstrating Plaintiffs possessed actual knowledge of the provisions of the subject insurance policy or the identity of Pearl River County's insurer prior to the July 21, 2015 settlement."

## DISCUSSION

We review the denial of a motion for summary judgment *de novo*, applying the same standard as the district court.  *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836-37 (5th Cir. 2009).  Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). Our review of the evidence is in the light most favorable to the opponent of summary judgment. *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

We similarly give *de novo* review to a district court's determinations of state law, just as we do to its determinations of federal law. *See American Reliable Ins. Co. v. Navratil*, 445 F.3d 402, 404 (5th Cir. 2006). In this diversity action, we apply the substantive law of Mississippi. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). In determining Mississippi law, we look to the final decisions of the Mississippi Supreme Court. *See American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). Where the state's highest court has not spoken to an issue, we defer to intermediate state appellate court decisions unless convinced that the highest court would disagree. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 509-10 (5th Cir. 2014).

Mississippi has an uninsured motorist statute that protects insurers' subrogation rights. *See* MISS. CODE ANN. § 83-11-101. Nevertheless, the "Mississippi Supreme Court has applied a relatively thick coat of judicial gloss to the [Uninsured Motorist] Act." *Boatner v. Atlanta Specialty Ins. Co.*, 115 F.3d 1248, 1253 (5th Cir. 1997). That court explained that it "must enforce [the Uninsured Motorist] Coverage Act as a valid expression of [the] legislature's interest in protecting innocent victims at the hands of financially irresponsible drivers. In recognizing this valid expression [it has] consistently construed the Act to provide, not limit, protection." *Lawler v. Gov't Emps. Ins. Co.*, 569 So. 2d 1151, 1154 (Miss. 1990). For example, in holding that uninsured motorist coverage in a policy could be "stacked," the Mississippi Supreme Court explained that "in order to limit this coverage it must be done

in such clear and unambiguous language that it may be readily seen and understood by the insured that the coverage is limited." *Hartford Accident & Indem. Co. v. Bridges*, 350 So. 2d 1379, 1381 (Miss. 1977).

The Mississippi Supreme Court has never considered the enforceability of a consent-to-settle exclusion in an uninsured motorist policy against an unnamed additional insured. We do know the exclusion here would bar recovery if Netto were a named insured. *See U.S. Fid. & Guar. Co. v. Hillman*, 367 So. 2d 914, 919-22 (Miss. 1979). More recently, the Mississippi Supreme Court stated that "where the uninsured motorist statutes grant an insurer the right of subrogation and a provision in the policy precludes settlement with an uninsured motorist without the consent of the insurer, the provision of the policy is valid and will be upheld." *U.S. Fid. & Guar. Co. v. Knight*, 882 So. 2d 85, 92-93 (Miss. 2004) (quoting *Hillman*, 367 So. 2d at 921); *accord Smith v. Safeco Ins. Co. of Am.*, 704 F. Supp. 111, 113 (S.D. Miss. 1988).

These decisions are not dispositive, though, because Netto was an unnamed additional insured. That has some significance, first, because the state's high court has distinguished between named and unnamed insureds with respect to a variety of policy exclusions, including notice-of-suit exclusions, *see Rampy v. State Farm Mut. Auto. Ins. Co.*, 278 So. 2d 428, 433 (Miss. 1973). The Mississippi Supreme Court justified these distinctions by concluding that enforcing a notice provision against an unnamed insured would place "an impossible burden on persons who were not contracting parties and who did not have possession of the insurance policy, and could not notify an insurance company of which they had no knowledge." *Id.* The Mississippi Supreme Court has also drawn distinctions between the rights of named and unnamed insureds with respect to "stacking" of uninsured motorist coverage. *See Meyers v. American States Ins. Co.*, 914 So. 2d 669, 674-75 (Miss. 2005).

No. 18-60588

Also significant is that Mississippi courts routinely place the burden upon insurance companies to show that any exclusion to an uninsured motorist policy applies.  In holding that only a named insured is required to give the insurer notice of an action against an uninsured motorist, the Mississippi Supreme Court held that "[t]he burden of proof is upon the insurer to show not only that the insured has failed to perform the terms and conditions invoked upon him by the policy contract but in addition that it was substantially prejudiced thereby." *Rampy*, 278 So. 2d at 434 (citation omitted).  When determining whether a waiver of uninsured motorist coverage was valid, that court also placed "the burden of proof on the insurer to show that such an exclusion or any other quasi-rejection of uninsured motorist insurance was a knowing and informed decision." *Atlanta Cas. Co. v. Payne*, 603 So. 2d 343, 348 (Miss. 1992).

Consistent with these holdings, we conclude that another exception would apply to our facts.  An insurer must show that the unnamed additional insured knew or should have known of the insurance policy at issue and of the consent-to-settle provision.  An insurer could make such a showing by introducing evidence that it made reasonable efforts to inform the unnamed additional insured of the policy terms, or that the unnamed additional insured had access to a copy of the policy.  There certainly may be other forms of evidence.

Here, there is no evidence that Atlantic attempted to inform Netto of the policy terms, and indeed there was testimony that policy was not released to Pearl River County Employees as a matter of county policy.

AFFIRMED.